1
2
3
4
5
6
7               **UNITED STATES DISTRICT COURT**
8                   **DISTRICT OF NEVADA**
9
10
KYLE J. RODNEY,                        )
11                                      )
                Petitioner,            )        3:13-cv-00323-RCJ-VPC
12                                      )
vs.                                    )        **ORDER**
13                                      )
TIMOTHY FILSON,[1] *et al.*,           )
14                                      )
                Respondents.           )
15   _____/

16          Before the court for decision is a habeas corpus petition under 28 U.S.C. § 2254 brought by

17   Kyle J. Rodney, a Nevada prisoner.

18          I.  BACKGROUND[2]

19          On February 3, 2010, the State of Nevada charged Rodney in the state district court for Clark

20   County, Nevada, with burglary while in possession of a deadly weapon, conspiracy to commit

21   robbery, robbery with use of a deadly weapon, conspiracy to commit murder, attempted murder with

22   use of a deadly weapon, and battery with use of a deadly weapon resulting in substantial bodily harm.

23

24          [1]   Timothy Filson is automatically substituted for Renee Baker as the Warden of Ely State
25   Prison.  Fed. R. Civ. P. 25(d).

26          [2]  This background is derived from the exhibits provided by the respondents (ECF Nos. 14-18)
     and this court's own docket.

1   On June 28, 2010, a jury found Rodney guilty on all counts.  The court sentenced him to various

2   concurrent and consecutive terms ranging from 2 to 20 years.[3]

3        Rodney appealed.  On October 5, 2011, the Nevada Supreme Court affirmed the judgment of

4   conviction.

5        On November 9, 2011, Rodney filed, pro se, a state post-conviction petition for writ of

6   habeas corpus.  The state district court issued an order denying that petition on February 29, 2012,

7   that was affirmed on appeal by the Nevada Supreme Court on September 12, 2012.  Rodney initiated

8   a second state post-conviction proceeding on November 1, 2012, by filing another petition in the

9   state district court. That petition was dismissed on procedural grounds on April 9, 2012.  Rodney

10  appealed.

11       In June of 2013, while the appeal of the dismissal of his second state post-conviction was

12  pending, Rodney brought this federal habeas action.  The Nevada Supreme Court affirmed the

13  dismissal of his second state petition on January 16, 2014.

14       On January 22, 2015, Rodney filed an amended federal petition.  Pursuant to respondents'

15  motion to dismiss, this court determined that Grounds 2-6, and 9 were procedurally defaulted and

16  that Ground 10 was duplicative of other grounds in the petition.  The court also found Grounds 7, 8,

17  and 11-14 to be unexhausted.  Rodney abandoned those claims.

18       The remaining claim (Ground 1) is before the court for a decision on the merits.

19       II.    STANDARDS OF REVIEW

20       This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  28

21  U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

22

23

24       [3]  Rodney's accomplice, Craig Downing, was convicted in a separate proceeding of burglary
    while in possession of a deadly weapon, conspiracy to commit robbery, robbery with use of a deadly
25  weapon, attempted murder with use of a deadly weapon, and battery with use of a deadly weapon
    causing substantial bodily harm.

26

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized

3

"that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").  Because *de novo* review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard.  *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

III.     DISCUSSION

In Ground 1, Rodney claims that his constitutional rights to counsel, a fair trial, and due process were violated because there was insufficient evidence to support a verdict of guilt beyond a reasonable doubt.  In particular, he challenges the guilty verdicts on the charges of attempted murder, conspiracy to commit murder, and all the deadly weapon enhancements.  In support of this claim, Rodney suggests that the victim's credibility was suspect because he had lied at the preliminary hearing about buying drugs.  Rodney also alleges that the victim, Ralph Monko, lied about the extent of his injuries.  He further alleges that Monko's testimony conflicted with the testimony of Downing's girlfriend, Ashley Womack, who witnessed the crime from a pickup truck parked across the street from the site of the attack.  According to Rodney, Womack's testimony shows that (1)

4

1  neither assailant stated, "now you're going to die," during the attack, (2) no knife was used in the

2  attack, and (3) the bat used by the assailants was smaller than Monko represented.

3       As a constitutional matter, a due process violation does not arise from the presentation of

4  *conflicting* evidence at trial.  Instead, a petitioner's right to due process is violated if there is

5  *insufficient* evidence to support the jury verdict.  *Jackson v. Virginia*, 443 U.S. 307, 316-19 (1979).

6  Under that standard, the court inquires as to "whether, after viewing the evidence in the light most

7  favorable to the prosecution, any rational trier of fact could have found the essential elements of the

8  crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (citation omitted).  "This familiar

9  standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the

10  testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

11  facts."  *Id*.

12       In deciding Rodney's insufficiency of evidence claim, the Nevada Supreme Court concluded

13  as follows:

14
15       Appellant Kyle Jesse Rodney contends that insufficient evidence was adduced
to support the jury's verdict on the counts of conspiracy to commit murder and
attempted murder with the use of a deadly weapon.  We disagree and conclude that
16  the evidence, when viewed in the light most favorable to the State, is sufficient to
establish guilt beyond a reasonable doubt as determined by a rational trier of fact.  *See*
17  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Mitchell v. State*, 124 Nev. 807, 816,
192 P.3d 721, 727 (2008).

18       Trial testimony indicated that Rodney and his accomplice, Craig Downing,
traveled together to the victim's house where they proceeded to severely beat and rob
19  him, leaving him unconscious.  Rodney met the victim earlier that evening at a casino
where the victim won approximately $10,000.  The victim testified that he was not
20  sure who used which weapon, but they both beat him—one with a small bat and the
other with an unknown hard object.  At one point during the beating, the victim heard
21  one of the two men say to him, "something like, 'You're dead now.  You're dead
now.  We're killing you.  You're dead now.'"  And at that moment, the victim saw "a
22  big heavy knife" thrust towards his face, cracking his orbital bone and slicing through
to his skull.  As the victim attempted to crawl away, he was hit repeatedly in the back
23  of his head and then his face with the bat before he lost consciousness and stopped
moving.  Downing's girlfriend witnessed the attack and testified that it appeared that
24  Rodney and Downing were working together.  Rodney and Downing fled from the
scene together after stealing the victim's cell phone, wallet, and car keys.  Numerous
25  photographs detailing the victim's injuries were admitted and shown to the jury.

26

1

2

3

4

5

   It is for the jury to determine the weight and credibility to give conflicting testimony, and a jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See* NRS 193.165; NRS 193.330(1); NRS 199.480(1); NRS 200.010; NRS 200.030; *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992); *Bolden v. State*, 97 Nev.71, 73, 624 P.2d 20, 20 (1981). Additionally, circumstantial evidence alone may sustain a conviction. *See Buchanan v. State*, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003); *Grant v. State*, 117 Nev. 427, 435, 24 P.3d 761, 766 (2001) ("Intent need not be proven by direct evidence but can be inferred from conduct and circumstantial evidence.").

6

7

   Rodney also contends that cumulative error warrants a new trial. Because Rodney failed to demonstrate any error, we conclude that his contention lacks merit. *See Pascua v. State,* 122 Nev. 1001, 1008 n. 16, 145 P.3d 1031, 1035 n. 16 (2006).

8
ECF No. 17-5, p. 2-4.

9

10
   In addressing this issue on appeal of the denial of Rodney's state habeas petition, the Nevada Supreme Court further found and held:

11

12

13

14

15

   Next, appellant claimed that his due process rights were violated when the State failed to prove that he used a dangerous weapon. On direct appeal, this court rejected appellant's claim that there was insufficient evidence to convict him of conspiracy to commit murder and attempted murder with a deadly weapon. The doctrine of the law of the case prevents further litigation of this claim and cannot be avoided by a more detailed and focused argument. *Hall v. State*, 91 Nev. 314, 315–16, 535 P.2d 797, 798–99 (1975). Therefore, the district court did not err in denying this claim.

16
ECF No. 17-21, p. 5.

17
   Under Nevada law, attempted murder consists of "the performance of an act or acts which

18
tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the

19
deliberate intention unlawfully to kill." *Keys v. State*, 766 P.2d 270, 273 (Nev. 1988). "[I]ntent can

20
rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury

21
from the individualized, external circumstances of the crime, which are capable of proof at trial."

22
*Sharma v. State*, 56 P.3d 868, 874 (Nev. 2002). In addition, under Nev. Rev. Stat. § 195.020, "every

23
person concerned in the commission of a crime, whether he directly commits the act constituting the

24
offense or aids or abets in its commission is guilty as a principal." *Id.* at 870. However, "the aider or

25

26

6

abettor must have knowingly aided the other person with the intent that the other person commit the charged crime." *Id*. at 872.

Here, there is no dispute that Rodney and Downing attacked Monko as he exited his car in the garage of his home. Womack and Monko's testimony establishes that Downing and Rodney approached Monko in his garage and that Downing immediately struck Monko on the back of the head with a wooden bat Downing had concealed up his sleeve. ECF No. 15-6, p. 35-36; ECF No. 15-12, p. 22-23. According to Monko's testimony, each of the men continued to beat him, each with a different object. ECF No. 15-6, p. 37-40. Monko further testified that, during the attack, one of the men pulled Monko's head back by the hair and said something to the effect of "you're dead now," at which point Monko was struck in the head with a "big heavy knife." *Id*.; p. 41-43, 48-50. Monko also testified that he was rendered unconscious by the beating and, when he awoke, his attackers were gone. ECF No. 15-7, p. 2-4. Womack testified that she turned away and did not observe all of the attack. ECF No. 15-12, p. 24-27. In particular, she testified that she saw Rodney leaning over Monko, "but it was only for a few seconds because I was turning my head." *Id*., p. 26-27.

Viewing the evidence in the light most favorable to the prosecution, the testimony of Monko and Womack was sufficient for a rational trier of fact to find beyond a reasonable doubt that Rodney committed attempted murder under Nevada law. To the extent there is any conflict between the testimony of Womack and Monko, this court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference under *Jackson*. *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *see also United States v. Brady*, 579 F.2d 1121, 1127 (9th Cir. 1978) (explaining that "it is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts"); *United States v. Ramos*, 558 F.2d 545,

546 (9th Cir. 1977) ("[T]he reviewing court must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict.").

Nevada law defines a conspiracy as "an agreement between two or more persons for an unlawful purpose." *Doyle v. State*, 921 P.2d 901, 911 (Nev. 1996), *overruled on other grounds by Kaczmarek v. State*, 91 P.3d 16 (Nev. 2004). "A person who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator." *Id*. "Evidence of a coordinated series of acts furthering the underlying offense is sufficient to infer the existence of an agreement and support a conspiracy conviction." *Garner v. State*, 6 P.3d 1013, 1020 (2000), *overruled in part by Sharma*. "However, absent an agreement to cooperate in achieving the purpose of a conspiracy, mere knowledge of, acquiescence in, or approval of that purpose does not make one a party to conspiracy." *Id*.

Evidence presented at trial plainly demonstrates beyond reasonable doubt that Rodney and Downing, together, planned to attack Monko and rob him of money he had won gambling. Although there was no direct evidence of a conspiracy to commit murder, there was evidence from which to infer that Rodney and Downing agreed to kill Monko. As noted, Monko testified that each of assailants struck him with an object and that he was beaten unconscious. His testimony that he was struck several times with a blunt object and a knife was corroborated by the testimony a paramedic who treated him. ECF No. 15-8, p. 22-30. From this, a rational trier of fact could have found beyond a reasonable doubt that Rodney and Downing's plan to rob Monko also included killing him.

There was also sufficient evidence under *Jackson* to support the deadly weapon enhancements.

A "deadly weapon" for purposes of the enhancement in Nevada is defined as:

(a) Any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause substantial bodily harm or death;

(b) Any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death; or

(c) A dangerous or deadly weapon specifically described in NRS 202.255, 202.265, 202.290, 202.320 or 202.350.

Nev. Rev. Stat. 193.165(6).  The bat and the knife, given the manner in which they were used in this case, both qualify as deadly weapons for the purposes of the enhancement under Nevada law.  *See Cortinas v. State*, 195 P.3d 315, 324 (Nev. 2008) (baseball bat used as a deadly weapon in first-degree murder and robbery); *Nay v. State*, 167 P.3d 430, 431 (Nev. 2007) (same);  *Hernandez v. State*, 50 P.3d 1100, 1111 (Nev. 2002) (in addressing sentence enhancement, kitchen knife with seven-and-a-half-inch serrated blade was a deadly weapon); *Steese v. State*, 960 P.2d 321, 334 (Nev. 1998) (approving jury instruction that butcher knife with five- to seven-inch blade was a deadly weapon as a matter of law).

Based on the foregoing, Rodney is not entitled to habeas relief under the *Jackson* standard, especially in light of the extra layer of deference imposed by AEDPA.  *See Boyer v. Belleque*,  659 F.3d 957, 964 -65 (9th Cir. 2011) (noting that "the state court's application of the *Jackson* standard must be 'objectively unreasonable' to warrant habeas relief for a state prisoner).

Rodney also claims in Ground 1 that he was deprived of his constitutional right to effective assistance of counsel due to his counsel's failure to object to Monko's testimony, which Rodney claims was perjured.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel:  a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 688, 694.

1    On this issue, the Nevada Supreme Court found and held:

2          [A]ppellant claimed that trial counsel was ineffective for failing to object to
      the victim's perjured testimony. Appellant's claim is belied by the record, as trial
3     counsel did object and moved to strike the victim's testimony. Furthermore, counsel
      cross-examined the victim thoroughly about the discrepancies in the victim's
4     testimony at the preliminary hearing and at trial. Any inconsistencies or
      improbabilities in the testimony went to the weight of the testimony and not the
5     admissibility of the testimony; it was for the jury to determine the weight and
      credibility of the witnesses and testimony presented. *McNair v. State*, 108 Nev. 53,
6     56, 825 P.2d 571, 573 (1992). Thus, the district court did not err in denying this
      claim.

7

8    ECF No. 17-21, p. 3.

9          The Nevada Supreme Court identified and applied the proper federal law standard to

10   Rodney's ineffective assistance of counsel claim. *Id*., p. 2-3. The court's finding that counsel did, in

11   fact, object to Monko's testimony and moved for it to be struck is supported by the record. ECF No.

12   15-6, p. 45-46. And, this court's review of counsel's cross examination of Monko leads it conclude

13   that the cross-examination did not fall below the *Strickland* performance standard. Accordingly, this

14   court defers, under AEDPA, to the Nevada Supreme Court's conclusion that Rodney did not receive

15   ineffective assistance of counsel.

16         Based on the foregoing, the court denies Ground 1.

17         IV.  CONCLUSION

18         For the reasons set forth above, Rodney's petition for habeas relief is denied.

19                                  *Certificate of Appealability*

20         This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing

21   Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).

22   Accordingly, the court has sua sponte evaluated the claims within the petition for suitability for the

23   issuance of a COA. See 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir.

24   2002).

25

26

                                          10

1     Pursuant to 28 U.S.C. § 2253(c)(2), an COA may issue only when the petitioner "has made a

2   substantial showing of the denial of a constitutional right."  With respect to claims rejected on the

3   merits, a petitioner "must demonstrate that reasonable jurists would find the district court's

4   assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484

5   (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA

6   will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the

7   denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id*.

8     Having reviewed its determinations and rulings in adjudicating Rodney's petition, the court

9   declines to issue a certificate of appealability for its resolution of any procedural issues or any of

10   Rodney's habeas claims.

11     **IT IS THEREFORE ORDERED** that petitioner's amended petition for writ of habeas

12   corpus (ECF No. 33) is denied.  The Clerk shall enter judgment accordingly.

13     **IT IS FURTHER ORDERED** that a certificate of appealability is denied.

14   Dated:  February 16, 2017.

17   UNITED STATES DISTRICT JUDGE

11